# UNITED STATES DISTRICT COURT

# DISTRICT OF COLUMBIA

| | |
|---|---|
| Donald Dewees<br><br>Toronto, Ontario, Canada<br><br>Plaintiff,<br>v.<br><br>The United States of America<br><br>Defendant, | Case No: 1:16-cv-1579<br><br>**JURY DEMAND** |

## COMPLAINT

Plaintiff Donald Dewees, by its undersigned counsel, hereby brings this Complaint against Defendant the United States of America for a refund of federal penalties he paid to the United States of America and on information and belief alleges as follows:

## INTRODUCTION

1. Plaintiff Donald Dewees brings this action to recover penalties improperly assessed in 2015 and collected by the United States Internal Revenue Services ("IRS") for the late filing of Form 5471for the 12 tax years 1997-2008.

## THE PLAINTIFF

2. The Plaintiff, Mr. Dewees, is a United States citizen born in Los Angeles, California. He currently resides in Toronto, Ontario, Canada. At all times relevant to this action, Mr. Dewees did not reside in the United States.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1346(a)(1).

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1402(a)(2), because Mr. Dewees is not resident or has no principal place of business in any United States judicial district.

5. This suit is timely under 26 U.S.C § 6532(a). The Plaintiff filed a claim for refund on September 17, 2015 and was rejected on May 23, 2016 in its entirety.

## FACTUAL BACKGROUND

6. Donald Dewees was born in the United States in 1941. His Social Security Number is xxx-xx-6026.

7. Mr. Dewees moved to Canada in 1971 for his employment, and has maintained a residence in Canada continuously since 1971.

8. Mr. Dewees married his Canadian spouse, Margaret Ann Dewees, in 1975 and they have raised their family in Canada.

9. As a resident of Canada, Mr. Dewees worked as an employee in Canada, and was paid in Canadian dollars and received a Canadian T4 tax reporting slip (similar to a US W-2), reporting his earnings annually for tax purposes.

10. Mr. Dewees' earnings were approximately $118,504 US per year on average for the years at issue.

11. Mr. Dewees dutifully engaged a Canadian tax professional and annually filed and paid his Canadian taxes, in accordance with Canadian tax laws.

12. In the early 1970s, Mr. Dewees also began to undertake some professional consulting, in addition to his employment. In discussion and with the advice of his Canadian tax professional, he incorporated a Canadian corporation in 1979 for the purpose of establishing his consulting business. Notably, using a corporation as an entity to conduct a small business is a common practice in Canada, and widely accepted for Canadian tax purposes.

13. By 2009, Mr. Dewees was concerned about not filing US returns and became aware of the potential penalties for not filing US returns. He was unsure how to begin filing again. He was referred to a U.S. tax specialist on September 24, 2009.

14. Mr. Dewees was advised that the then current 2009 Offshore Voluntary Disclosure Program (OVDP) was extended until October 15, 2009.

15. On October 3, 2009, Mr. Dewees' eldest son unexpectedly took his life. As a result, Mr. Dewees' focus was on the needs of his family, and his attention was diverted from the Offshore Voluntary Disclosure Program.

16. Nevertheless, Mr. Dewees' Offshore Voluntary Disclosure Program submission was completed on his behalf October 14, 2009 and sent to the IRS. At the same time, Mr. Dewees sent to the IRS, for the tax years 2003-2008, his US Forms 1040, 90-22.1 and 5471.

17. On November 23, 2009 Mr. Dewees received a letter from the IRS indicating preliminary acceptance into the OVDP.

18. On November 24, 2009 the IRS notified Mr. Dewees that additional information was required in order to process his OVDP submission. The requested information was included in the forms 1040, 90-22.1 and 5471 for 2003-2008 that Mr. Dewees had already sent to the IRS on October 14.

19. On March 4, 2010 Power of Attorney Form 2848 was sent to Mr. Harrington by his representative again.

20. On April 6, 2010 his representative agreed to provide Mr. Harrington with the information he required. It was indicated to Mr. Harrington that Mr. Dewees' family had suffered a family tragedy and unwanted media attention (as a result of his son's death), and that as a result Mr. Dewees was difficult to reach.

21. On May 20, 2010 Mr. Dewees' representative provided the requested foreign bank account information that Mr. Harrington requested; this information had been contained in the October 2009 OVDP submission.

22. On May 26, 2010 a letter dated May 19, 2010 was received, indicating that Mr. Dewees would be terminated from the OVDP for failure to furnish the requested 1040s and related FBAR forms (for the years 2003-2008).

23. In June 2010, the filings requested in the correspondence dated May 19, 2010 were re-sent.

24. On October 28, 2010 penalties totaling $252,480 are assessed against Mr. Dewees. Of this, $0 are penalties relating to Form 5471 non-compliance and $252,480 are penalties relating to FBAR non-compliance.

25. On November 19, 2010 the penalty assessed is reduced to $185,862, as some accounts had been double counted by the IRS.

26. On January 13, 2011 Mr. Dewees receives notification that he is at risk of being terminated from the OVDP program because of his failure to pay the assessed penalty.

27. On June 9, 2011, Mr. Dewees received a letter from Mr. Harrington requesting confirmation of his intent to no longer participate in the OVDP.

28. On June 16, 2011 Mr. Dewees confirms his withdrawal from the OVDP based on the excessive amount of penalties owing. The penalties were removed from his account.

29. On September 20, 2011 Mr. Dewees receives a letter from Mr. Harrington dated September 9, 2011, imposing a new $120,000 of penalties for the late filing of Form 5471. The letter indicates that reasonable cause for failure to file will be considered.

30. Mr. Dewees responded to Mr. Harrington's request for reasonable cause on September 27th.

31. In addition to the $120,000 of penalties imposed in relation to the late filing of Form 5471, Mr. Dewees is also assessed an additional $10,000 ($5000 per year for 2007 and 2008);

32. Mr. Dewees pays this additional $10,000 immediately in hopes it would help his appeal of the $120,000 new penalty imposed.

33. On January 9, 2012 the Director of Field Operations, International Compliance indicated that the previous examination report "has been reviewed and accepted", unchanged.

34. On February 25, 2013 the Taxpayer Advocate's office undertakes to investigate the civil penalties assessed against Mr. Dewees.

35. On February 25, 2014 Mr. Dewees is notified that his request for abatement of civil penalties has been disallowed; and that his file has been forwarded to Appeals.

36. On August 5, 2014, the Appeals Office indicates that, "Mr. Dewees has failed to show that reasonable cause was used for the years shown…" Notably, the June 18, 2014 changes in the offshore account compliance program appear to recognize non-willful non-compliant taxpayer and provide taxpayers "a new avenue to come back into compliance with their tax obligations".

37. Correspondence dated May 26, 2015 from Canada Revenue Agency indicated that Mr. Dewees' 2014 tax refund was being held in abeyance. Subsequent correspondence dated July 17, 2015 from Canada Revenue Agency stated that the application of Article XXVI A of the Canada-US Tax Convention (1980) provides that the Internal Revenue Service may request the Canada Revenue Agency to assist in collecting outstanding amounts due.

38. As a result of the collection efforts under Article XXVI A of the Canada-US Tax Convention (1980), Mr. Dewees paid the outstanding debt to the Internal Revenue Service on August 18, 2015 by sending to the Canada Revenue Agency a cheque in the amount of $134,116.46 US made out to the United States Treasury.

## COUNT I

39. The Plaintiff realleges and incorporates by reference all of the allegations in all of the proceeding paragraphs.

40. The Eighth Amendment to the United States Constitution states "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted". U.S. Const. amend. VIII.

41. The Excessive Fines Clause is not limited only to fines that are criminal in nature but extends to civil fines as well. *Austin v. United States*, 509 U.S. 602, 610 (1993). A fine is subject to the Excessive Fines Clause if one of the purposes of the fine is punishment. *Id.*; *United States v. Bajakajian* 542 U.S. 321, 328 (1998). Fines calibrated for retributive or deterrent purposes are considered to be for the purpose of punishment. *Austin*, 509 U.S. at 610.

42. Fines governed by the Excessive Fines Clause must not be excessive. The "touchstone" of the excessiveness analysis is "principle of proportionality," requiring a comparison of the amount of the fine and the gravity of offense. *Bajakajian*, 542 U.S. at 334. A fine violates the Eighth Amendment when the fine is grossly disproportional to the gravity of the offence. *Id*.

43. The U.S. Supreme Court has identified three "general criteria" to guide the determination of whether a fine is grossly disproportionate: (1) "the degree the defendant's reprehensibility or culpability"; (2) "the relationship between the penalty and the harm to the victim caused by the defendants actions"; and (3) "the sanctions imposed in other cases for comparable misconduct." *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 434-435 (2001).

44. Under 26 U.S.C. § 6679, "any person required to file a return under section 6046 and 6046A who fails to file such return at the time provided in such section, or who files a return which does not show the information required pursuant to such section, shall pay a penalty of $10,000, unless it is shown that such failure is due to reasonable cause."

45. The Plaintiff did not willfully refuse to file any reporting's as directed under 26 USC §§ 6046, 6046A, and the defendant was not deprived of any revenue under those sections.

46. Penalties were imposed on the plaintiff under this section of $120,000. The Defendants are in receipt of these funds including interest, totaling $134,116.46 US.

47. These penalties are significantly disproportional to the tax ($0) owning from these filings.

48. The Plaintiff filed all the missing returns simultaneously and has timely filed all required reporting since. The magnitude of this post-filing penalty had no bearing on the Plaintiff's decision to file the required returns as it was imposed after the Plaintiff was compliant with the requirement.

## COUNT II

49. The Plaintiff realleges and incorporates by reference all of the allegations in all of the proceeding paragraphs.

50. The Defendants currently have a program ("Streamlined Foreign Offshore Procedures") in place (as introduced by IR News Release 2014-73, on June 18, 2014) to permit qualifying individuals to submit delinquent returns including those required under 26 U.S.C. §§ 6046, 6046A with no correspondent penalty for late or missing filings, as detailed in the Streamlined Filing Compliance Procedures. The Defendant permitted some cases to be transferred to this new program alleviating the penalty provisions.

51. The Defendant permitted some United States persons the ability to present the same filings without being subject to any penalties, but not the Plaintiff.

52. The Fifth Amendment provides that "No person shall … be deprived of life, liberty, or property, without due process of law .. "U.S. Cont. amend. V. The Due Process Clause of the Fifth Amendment includes a guarantee of equal protection equivalent to that expressly provided for under the Equal Protection Clause of the Fourteenth Amendment. "An equal protection claim against the federal government is analyzed under the Due Process Clause of the Fifth Amendment." *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 217 (1995); *United States v. Ovalle*, 136 F.3d. 1092, 1095 (6th Cir. 1988). Thus the federal government may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

53. As other citizens in the same situation are afforded the opportunity to submit filings for the reporting of foreign controlled corporations, bank account reporting forms, and foreign trust reporting forms under this program, and the Plaintiff similarly situated was penalized, the Defendant has violated the equal protection clause of the U.S. Constitution.

## COUNT III

54. The Plaintiff realleges and incorporates by reference all of the allegations in all of the proceeding paragraphs.
55. The Plaintiff received a notice that the penalty has been assessed at which time he corresponded with the examiner and appeals officer of the Internal Revenue Service administratively.
56. Both parties rejected the Plaintiff's request to abate the penalty.
57. There is no avenue to appeal a decision on this penalty beyond the administrative officer of the Internal Revenue Service.
58. The United States Tax Court, is a court of record established by Congress under Article I of the U.S. Constitution. When the Commissioner of Internal Revenue has determined a tax deficiency, the taxpayer may dispute the deficiency in the Tax Court before paying any disputed amount. The Tax Court's jurisdiction also includes the authority to redetermine transferee liability, make certain types of declaratory judgments, adjust partnership items, order abatement of interest, award administrative and litigation costs, redetermine worker classification, determine relief from joint and several liability on a joint return, review certain collection actions, and review awards to whistleblowers who

provide information to the Commissioner of Internal Revenue on or after December 20, 2006.

59. The Defendant did not issue a notice of deficiency for the penalty assessment and as such the U.S. Tax Court has no jurisdiction to hear the Plaintiff's appeal under Rule 13 of the Court.

60. The U.S. Tax Court des not have jurisdiction over penalties imposed when there is no deficiency in tax.

61. The Defendant is aware that there is no basis for appeal, either from administrative of judicial avenues, commenced collection action.

62. The Defendant utilized the provisions of Article XXVI A of the Canada-United States Tax Convention (1980) as amended. Under Paragraph 4 of the aforementioned Article, once an application of claim is made by the US and accepted by Canada, "the revenue claim is treated by Canada as an amount payable under the Income Tax Act, the collection of which is not subject to any restriction"

63. Further noted in Article XXVI A, Paragraph 5 of the Canada-United States Tax Convention, "Nothing in this Article shall be construed as creating or providing any rights of administrative or judicial review of the applicant's State's finally determined revenue claim by the requested State"

64. The Plaintiff had no appeal right in the United States to prevent this collection assistance from Canada.

65. Canada willingly complied to collect this penalty request claim for the U.S. by seizing assets of the Plaintiff with no appeal mechanism.

66. The Fifth Amendment to the U.S. Constitution states that "No person shall … be deprived of life, liberty or property without due process of law".

67. The IRS imposing a penalty with no appeal through administrative means or the U.S. Tax Court, and then assessing and collecting a claim violates the Due Process Clause of the United States Constitution.

68. The provision of the Canada-US tax convention requesting that Canada collect and seize assets of a United States citizen with no appeal or review is unconstitutional under the provisions of the United States Constitution.

## Prayer for Relief

69. The Plaintiff asks this Court to return the funds seized by the IRS in the amount of $134,116.46 US plus interest, and any punitive damages the Court sees fit.

70. The Plaintiff asks this Court to find provisions for collection in Article XXVI A of the Canada-United States Tax Convention (1980, as amended) to be unconstitutional.

71. Grant any and all other relief this Court deems just and equitable.

Dated August 3rd, 2016

Respectfully Submitted

/s/ Mark A. Feigenbaum

Mark A. Feigenbaum (Bar ID 492260)
1137 Centre Street Suite 201
Thornhill, Ontario Canada L4J 3M6
(905) 695-1269
(905) 695-0869 Fax
mark@feigenbaumlaw.com
*Attorney for Plaintiff*