IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

DONALD DEWEES,                          )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )        Case No. 1:16-cv-1579-CDC
                                        )
THE UNITED STATES OF AMERICA,           )
                                        )
            Defendant.                  )
_____ )

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF
THE UNITED STATES' MOTION TO DISMISS**

CAROLINE D. CIRAOLO
Principal Deputy Assistant Attorney General

CHRISTOPHER J. WILLIAMSON
Trial Attorney
U.S. Department of Justice, Tax Division
Ben Franklin Station
Post Office Box 227
Washington, D.C.  20044

OF COUNSEL:

CHANNING D. PHILLIPS
United States Attorney

14475887.1

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

STATEMENT OF THE CASE ............................................................................................ 2

1.   Dewees' failure to file required United States income tax and informational
     returns.................................................................................................................... 2

2.   The Service's offshore voluntary compliance initiatives........................................ 2

     A.   The 2009 OVDP and 2014 SFCP ................................................................ 2

     B.   Dewees' participation in OVDP and subsequent penalty assessment.......... 6

3.   Payment of the amount at issue............................................................................... 9

     A.   The United States-Canada Income Tax Convention. ..................................... 9

     B.   Dewees' payment to the United States and refund claim............................. 11

STANDARD OF REVIEW ............................................................................................... 11

ARGUMENT..................................................................................................................... 12

I.   THE PENALTIES ASSESSED AGAINST DEWEES DO NOT VIOLATE
     THE EIGHTH AMENDMENT................................................................................ 12

     A.   The assessed penalties are not fines under the Eighth Amendment............. 12

     B.   Section 6038 penalties are not excessive under the Eighth
          Amendment. ................................................................................................. 16

II.  DEWEES' WITHDRAWAL FROM OVDP PRECLUDES SFCP
     PARTICIPATION.................................................................................................... 18

III. DEWEES ABILITY TO CHALLENGE THE VALIDITY OF THE PENALTIES
     IN THE DISTRICT COURT IS SUFFICIENT TO PROTECT HIS DUE
     PROCESS RIGHTS................................................................................................. 21

CONCLUSION ................................................................................................................. 23

14475887.1

# TABLE OF AUTHORITIES

**Page(s)**

## <u>Cases</u>

*Armour v. City of Indianapolis*, --- U.S. ---, 132 S. Ct. 2073 (2012) ...........................................19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................12

*Austin v. United States*, 509 U.S. 602 (1993) .....................................................................13,14,17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................11

*Bickham Lincoln-Mercury v. United States*, 168 F.3d 790 (5th Cir. 1999) ...............................15

*Browning-Ferris Indus. v. Kelco Disposal, Inc.*, 492 U.S. 257 (1989) ...................................12,13

*Bunce v. United States*, 28 Fed. Cl. 500 (Fed. Cl. 1993) ............................................................20

*Collins v. SEC*, 736 F.3d 521 (D.C. Cir. 2013) .......................................................................16,17

*Dandridge v. Williams*, 397 U.S. 471 (1970) ...............................................................................19

*Goss v. Lopez*, 419 U.S. 565 (1975) ............................................................................................22

*Heckler v. Chaney*, 470 U.S. 821 (1985) ................................................................................19,20

*Helvering v. Mitchell*, 303 U.S. 391 (1938) ...........................................................................13,14

*Hudson v. United States*, 522 U.S. 93 (1997) ........................................................................12,14,15

*I&O Publish. Co., Inc. v. Comm'r*, 131 F.3d 1314 (9th Cir. 1997) ............................................14

*In re Wyly*, 552 B.R. 338 (Bankr. N.D. Tx. 2016) .......................................................... *passim.*

*Jacob v. Roberts*, 223 U.S. 261 (1912) .......................................................................................22

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994) .........................................................11

*Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61 (1911)........................................................19

*Little v. Comm'r*, 106 F.3d 1445 (9th Cir. 1997) ........................................................................15

*Louis v. Comm'r*, 170 F.3d 1232 (9th Cir. 1999)....................................................................14,15

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ..................................................................18

14475887.1

*Maze v. IRS, --- F. Supp. 3d ---, 2016 WL 4007075 (D.D.C. July 25, 2016)................. *passim.*

McNichols v. Comm'r, 13 F.3d 432 (1st Cir. 1993)...................................................13,14

*Phillips et al. v. Comm'r, 283 U.S. 589 (1931)................................................................22

Regan v. Taxation With Representation, 461 U.S. 540 (1976)........................................19

Rogers v. Comm'r, 783 F.3d 320 (D.C. Cir. 2015) ............................................................2

Thomas v. Comm'r, 62 F.3d 97, 100 (4th Cir.1995) .......................................................14

*Schweiker v. Wilson, 450 U.S. 221 (1981) .....................................................................19

Smith v. Comm'r, 133 T.C. 424 (2009) ...........................................................................22

Solem v. Helm, 463 U.S. 277 (1983) ...............................................................................17

Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998) ...........................................11

*United States v. Bajakajian, 524 U.S. 321 (1998) ................................................. *passim.*

United States v. Bisceglia, 420 U.S. 141 (1975) ...............................................................3

*United States v. Halper, 490 U.S. 435 (1989) .....................................................12,14,17

## Constitution

U.S. Const. amend. V ................................................................................................. *passim.*

U.S. Const. amend. VIII............................................................................................. *passim.*

## Statutes

21 U.S.C. § 881 ...............................................................................................................14

26 U.S.C. § 6038 .................................................................................................... *passim.*

26 U.S.C. § 6201 ..............................................................................................................22

26 U.S.C. § 6211 ..............................................................................................................22

26 U.S.C. § 6212 ..............................................................................................................22

26 U.S.C. § 6213 ..............................................................................................................22

26 U.S.C. § 6677 ................................................................................................................3

14475887.1

26 U.S.C. § 6679 ................................................................................................3

26 U.S.C. § 7121 ..............................................................................................20

26 U.S.C. § 7122 ..............................................................................................20

26 U.S.C. § 7201 ................................................................................................3

26 U.S.C. § 7206 ................................................................................................3

## **Other Materials**

26 C.F.R. § 1.6038-2 ........................................................................................7,8

United States-Canada Income Tax Convention............................................ *passim.*

Fed. R. Civ. P. 12............................................................................................11,18

14475887.1

## INTRODUCTION

Donald Dewees is a United States citizen, who has resided in Canada since 1971. He admits he failed to file various income tax and informational returns with the Internal Revenue Service for multiple years, including Forms 5471, Informational Return for U.S. Persons With Respect to Certain Foreign Corporations.  Under 26 U.S.C. § 6038, individuals who are required to file Form 5471 are subject to a $10,000 penalty for each year they do not file the required form, unless they show the failure was due to reasonable cause.  As a result of his failure to file Forms 5471, the Service assessed a $10,000 penalty for each of the years 1997 through 2008, for a total amount of $120,000. After the Canada Revenue Agency ("CRA") informed him that a Canadian tax refund was being held in abeyance subject to application of Article 26A of the United States-Canada tax treaty, Dewees paid the United States the amount owed plus interest.

Dewees brought this suit seeking a refund of the total amount paid.  He does not contest validity of penalties at issue.  Rather, he raises several constitutional challenges to the imposition of the penalties, none of which have merit.  *First*, he contends the amount of the penalty violates the Excessive Fines Clause of the Eighth Amendment. (*See* Compl., Count I.)  Assessed penalties, including those under section 6038, are not fines under the Eighth Amendment.  In addition, the amount of the penalty, which is fixed by Congress, is not excessive.  *Second*, he alleges his equal protection rights under the Fifth Amendment have been violated because he was not permitted to participate in the Streamlined Filing Compliance Procedures program ("SFCP").  (*See* Compl., Count II.)  Dewees was prohibited from SFCP under the terms of that program because he had

1

previously participated in, but left, the 2009 Offshore Voluntarily Disclose Program

("OVDP").  *Finally*, he argues collection assistance under Article 26A violates the Fifth

Amendment due process clause because he did not have a non-administrative, pre-

payment ability to challenge the collection of the penalties.  (*See* Compl., Count III.)  His

ability to bring this refund suit in District Court sufficiently protects his due process

rights.  His complaint, therefore, should be dismissed.

## STATEMENT OF THE CASE

**1.     Dewees' failure to file required United States income tax and informational returns.**

        Donald Dewees is a United States citizen.  (*See* Compl., ¶2.)  Since 1971, he has

resided continuously in Canada.  (*See id.*, ¶¶2, 7.)  He earned income in Canada through

employment and professional consulting.  (*See id.*, ¶¶10, 12.)  In 1979, he incorporated a

Canadian corporation "for the purpose of establishing his consulting business."  (*Id.*,

¶12.)  He alleges that, "[i]n 2009, [he] was concerned about not filing US returns and

became aware of the potential penalties for not filing US returns."  (*Id.*, ¶13.)  He admits

he had not previously filed any US informational returns, including Reports of Foreign

Bank and Financial Accounts ("FBAR") or Forms 5471.  (*See id.*, ¶¶13, 16.)

**2.     The Service's offshore voluntary compliance initiatives.**

     ***A.     The 2009 OVDP and 2014 SFCP***

     United States citizens are required to file tax and informational returns and

report foreign income even if they live abroad.  *See Rogers v. Comm'r*, 783 F.3d 320, 322

(D.C. Cir.), *cert denied* --- U.S. ---, 136 S. Ct. 369, 193 (2015) ("[t]he United States income

tax system reaches all U.S. citizens' income no matter where in the world it is earned"). The tax system is "based on self-reporting," which "depends upon the good faith and integrity of each potential taxpayer to disclose honestly all information relevant to tax liability." *United States v. Bisceglia*, 420 U.S. 141, 145 (1975).  For those individuals who fail to honestly disclose the required domestic or foreign information, Congress has authorized a wide array of civil and criminal penalties.  *See, e.g.*, 26 U.S.C. §§ 6038(b), 6677, 6679 (civil); 26 U.S.C. §§ 7201, 7206 (criminal).

The Service has limited resources available to conduct affirmative investigations of taxpayers suspected of non-compliance.  For that reason, the Service "uses a variety of voluntary disclosure programs to encourage non-compliant taxpayers to come into compliance with the applicable law." *Maze v. IRS*, --- F. Supp. 3d ---, 2016 WL 4007075, at *2 (D.D.C. July 25, 2016) (appeal filed).  Through these programs, the Service "provides certain benefits for taxpayers in exchange for voluntary disclosure pursuant to applicable guidelines." *Id.*  Broadly, the Service has offered two types of programs:

> (a) OVDPs that covered the most recent eight tax years, which provided taxpayers finality with respect to their outstanding liabilities for all prior years, and provided an assurance that the Internal Revenue Service would not refer the taxpayer for criminal investigation and prosecution; and

> (b) Streamlined Procedures, which covered only the most recent three years and did not offer to provide taxpayers finality with respect to earlier tax periods or an assurance regarding potential criminal investigation.

*See Streamlined Filing Compliance Procedures*, https://www.irs.gov/individuals/ international-taxpayers/streamlined-filing-compliance-procedures (taxpayers who "seek assurance that they will not be subject to criminal liability and/or subject to

3

substantial monetary penalties should consider participating in the Offshore Voluntary

Disclosure Program" rather than the Streamlined Procedures).

Through the various OVDPs, the Service would offer to compromise the tax and

penalties for which taxpayers would otherwise owe in exchange for voluntary

disclosure of delinquent informational returns, such as FBARs and Forms 5471.  For the

2009 OVDP, the Service offered a uniform penalty framework, which required

taxpayers to pay the amount of tax owed plus interest, a 20% accuracy related penalty,

and an additional penalty "in lieu of the FBAR and other potential penalties that may

apply."  Offshore Voluntary Disclosure Program: Questions and Answers, FAQ 12,

https://www.irs.gov/uac/voluntary-disclosure-questions-and-answers.

All iterations of OVDP are strictly voluntary.  *See id*.  Taxpayers who are not

satisfied with OVDP settlement terms remain free either not to participate or withdraw

at any time.  *See id*.  Of course, taxpayers who do not enter OVDP or withdraw from the

program may be investigated by the Service.  This investigation would subject such

taxpayers to the assessment of their actual liabilities for taxes, penalties, and interest,

which could exceed what they would have paid had they remained in OVDP, and, if

they had not made truthful voluntary disclosures, potential criminal liability.  The 2009

OVDP FAQs note that taxpayers may be subject to penalties under section 6038 if they

fail to file Forms 5471.  *See id.*, FAQ 15.

In 2014, the Service introduce SFCP, which was "intended for U.S. Taxpayers

whose failure to disclose their offshore assets was non-willful."  *See* IR-2014-73 (June 18,

2014), https://www.irs.gov /uac/newsroom/irs-makes-changes-to-offshore-programs-

revisions-ease-burden-and-help-more-taxpayers-come-into-compliance.  To participate

in SFCP, a taxpayer living outside the United States is required to file three years of

returns and six years of FBARs, as well as pay tax and interest for three years.  *See*

Streamlined Filing Compliance Procedures (Outside) ("SFCP Outside"),

https://www.irs.gov/ individuals/international-taxpayers/u-s-taxpayers-residing-

outside-the-united-states.  In return, "these filings and payments serve as a compromise

for all penalties not involving willfulness for the three years covered by the program."

*Maze*, 2016 WL 4007075, at *4.  Significantly, "the IRS can pursue the taxpayer for fraud-

related penalties for all years and for willful FBAR penalties for all years, as well as

other penalties from the years *prior* to the three years subject to this program."  *Id.*

(emphasis in original) (citing SFCP Outside).  In addition, SFCP does not provide any

assurance of non-referral for criminal prosecution or a final settlement agreement

resolving issues related to prior years.  *See* SFCP Outside.

The Service permits certain individuals to move between OVDP and SFCP in a

limited circumstance.  A taxpayer who had already entered OVDP prior to July 1, 2014,

"*may* be able to receive the favorable penalty terms of [SFCP], but must remain the

OVDP in order to do so."  *Maze*, 2016 WL 4007075, at *4; *see also* Streamlined Filing

Procedures Overview, https://www.irs.gov/individuals/ international-

taxpayers/streamlined-filing-compliance-procedures ("A taxpayer eligible for

treatment under the streamlined procedures who submits, or has submitted, a

voluntary disclosure letter under the OVDP (or any predecessor offshore voluntary

disclosure program) prior to July 1, 2014, but who does not yet have a fully executed

5

OVDP closing agreement, may request treatment under *the applicable penalty terms* available under the streamlined procedures.") (emphasis added).  A taxpayer who enters OVDP *after* July 1, 2014 "is categorically barred" from SFCP.  *Maze*, 2016 WL 4007075, at *4.  Similarly, a taxpayer who was in OVDP but left prior to receiving a final closing agreement is also barred from SFCP.  *See id.* ("There is no alternative path for a taxpayer participating in an OVDP to leave such a program and enter [SFCP] on the terms applicable to new participants in that program.").  A taxpayer that has already been assessed penalties for failing to file information returns is not eligible to have those penalties abated through the SFCP.  *See* Streamlined Filing Procedures Overview, https://www.irs.gov/individuals/ international-taxpayers/streamlined-filing-compliance-procedures ("However, any penalty assessments previously made with respect to those filing will not be abated.").

### B.   *Dewees' participation in OVDP and subsequent penalty assessment.*

On or about September 24, 2009, Dewees contacted a tax specialist and was advised that he could still participate in the 2009 OVDP, if he made the required submission by October 15, 2009.  (*See* Compl., ¶¶13, 14.)  On October 14, 2009, Dewees submitted his OVDP materials, along with FBARs, Forms 5471, and Forms 1040 for the 2003 through 2008 tax years.  (*See id.*, ¶16.)  The Service informed him that he was accepted into OVDP.  (*See id.*, ¶17.)

On October 28, 2010, under the terms of the 2009 OVDP, the Service assessed a penalty against Dewees in the amount of $252,480, which was subsequently reduced to $185,862.  (*See id.*, ¶¶24-25.)  Dewees alleges the Service did not assess any penalties at

6

this time for his failure to file Forms 5471.  (*See id.*, ¶24.)  On June 16, 2011, after receiving notices stating he would be terminated from OVDP for failure to pay the assessed penalty, Dewees informed the Service that he was withdrawing from OVDP "based on the excessive amount of penalties owing."  (*Id.*, ¶¶26-28.)  According to Dewees, the penalties "were removed from his account."  (*Id.*, ¶28.)

On September 20, 2011, the Service informed Dewees that it was assessing penalties against him totaling $120,000 for late-filing Forms 5471.  (*See id.*, ¶29.)  Dewees alleges that the penalties were assessed under 26 U.S.C. § 6679.  (*See* Comp., ¶¶44-46.)  The penalties at issue, however, were assessed under 26 U.S.C. § 6038, not section 6679. (*See* Harrington Decl., ¶¶9-16.)

Section 6038 requires individuals who "control" a foreign corporation or partnership to furnish certain information with respect to the foreign entity through Form 5471.  *See* 26 U.S.C. § 6038(a)(1); 26 C.F.R. § 1.6038-2(a).  The required information "shall be furnished for the annual accounting period of the foreign business entity ending with or within the United States person's taxable year."  26 U.S.C. § 6038(a)(2). With regard to a foreign corporation, a person is deemed to be in "control" of the corporation if such person owns 50% or more of the total stock of the entity.  *See* 26 U.S.C. § 6038(e)(2); 26 C.F.R. § 1.6038-2(b).  Individuals are required to file Forms 5471 even if "the information required may not affect the amount of any tax due under the Internal Revenue Code."  26 C.F.R. § 1.6038-2(k)(4).  Dewees does not dispute that he was required under section 6038 to submit Forms 5471 on a yearly basis.

Individuals who do not file the required form are subject to a $10,000 per year penalty.  *See* 26 U.S.C. § 6038(b)(1); 26 C.F.R. § 1.6038-2(k)(1)(i).  The amount of the penalty shall be increased by up to $50,000 per year if the individual fails to make the required payment more than 90 days after notice is sent to the individual regarding the failure to file.  *See* 26 U.S.C. § 6038(b)(2); 26 C.F.R. § 1.6038-2(k)(1)(ii).

Under section 6038(c)(4), the time for filing Forms 5471 "shall be treated as being not earlier than the last day on which (as shown to the satisfaction of the Secretary) reasonable cause existed for failure to furnish such information."  Thus, if the Service has determined an individual's failure to file the required forms was due to reasonable cause, the Service will not assess a penalty under section 6038(b).  To show reasonable cause, an individual "must make an affirmative showing of all facts alleged as reasonable cause for such failure in a written statement containing a declaration that it is made under the penalties of perjury."  26 C.F.R. § 1.6038-2(k)(3). The Service "shall determine whether the failure to furnish information was due to reasonable cause, and if so, the period of time for which such reasonable cause existed."  *Id.*

The Service informed Dewees that it would consider whether his failure to file the Forms 5471 was due to reasonable cause.  (*See id.*)  On September 27, 2011, Dewees requested the Service abate the penalties because he had reasonable cause for his failure to timely file.  (*See id.*, ¶30.)  His complaint neither explains his reasonable cause argument nor asserts it in support of his claims in this case.  On February 25, 2014, the Service denied his abatement request and forwarded it to IRS Appeals.  (*See id.*, ¶35.)  On August 5, 2014, IRS Appeals denied his request.  (*See id.*, ¶36.)

14475887.1

Dewees states that "[n]otably, the June 18, 2014 changes in the offshore account compliance program appear to recognize non-willful non-compliant taxpayer and provide taxpayers 'a new avenue to come back into compliance with their tax obligations.'" (*Id.*, ¶36.)  While this statement appears to relate to SFCP, Dewees does not allege that he made a request to participate in SFCP or what, if any, response he received from the Service regarding any possible request.  The complaint merely states the Service "permitted some United States persons the ability to present the same filings [through SFCP] without being subject to any penalties, but not the Plaintiff."  (*Id.*, ¶51.)

**3.    Payment of the amount at issue.**

**A.    *The United States-Canada Income Tax Convention.***

The United States and Canada entered into a tax treaty, which went into force on August 16, 1984.  *See* United States-Canada Income Tax Convention, (the "US-Canada Treaty") (available at www.irs.gov/pub/irs-trty/canada.pdf).  Since its inception, the United States and Canada have entered into subsequent Protocols, which have amended and expanded the terms of the treaty.  On March 17, 1995, the United States and Canada signed the Third Protocol.  *See id.*, Third Protocol, Art. 21.

Amongst its various provisions, the Third Protocol added Article XXVIA ("Article 26A"), which provides for assistance in collection between the United States and Canada.  *See id.*, Third Protocol, Art. 15.  Article 26A states that the United States and Canada shall "undertake to lend assistance to each other in the collection of taxes referred to in paragraph 9 [of this article], together with interest, costs, additions to such taxes and civil penalties."  *Id.*, ¶1.  Article 26A refers to claims for the collection of taxes

9

and other amounts as "revenue claims." *Id.*  It allows the United States to seek Canada's assistance in collecting a revenue claim owed by a United States citizen, who either lives or has property in Canada, and vice versa.

Article 26A sets forth the procedure by which each country may request that the other collect a revenue claim.  The application for assistance "shall include a certification by the competent authority of the applicant State that, under the laws of that State, the revenue claim has been finally determined." *Id.*, ¶2.  A revenue claim is finally determined "when the applicant state has the right under its internal law to collect the revenue claim and all administrative and judicial rights of the taxpayer to restrain collection in the applicant States have lapsed or been exhausted." *Id.*

When application is made for a finally determined revenue claim, the requested State may or may not accept the collection assistance request. *See id.*, ¶3.  If the revenue claim is accepted, then the requested State shall collect the claim "as though such revenue claim were the requested State's own revenue claim finally determined in accordance with the laws applicable to the collection of the requested State's own taxes." *Id.*  Accordingly, when the CRA accepts a collection assistance request from the United States, Article 26A requires that "the revenue claim shall be treated by Canada as an amount payable under the Income Tax Act, the collection of which is not subject to any restriction." *Id.*, ¶4(b).  Article 26A does not create or provide "any rights of administrative or judicial review of [a] finally determined revenue claim by the requested State [in this instance, Canada], based on any such rights that may be available under the laws of either Contracting State." *Id.*, ¶5.

10

B.     *Dewees' payment to the United States and refund claim.*

On May 26, 2015, CRA informed Dewees his "2014 tax refund was being held in abeyance." (Compl., ¶37.)  On June 17, 2015, CRA informed him his refund was being held under Article 26A.  (*See id.*)  Dewees alleges that "[a]s a result of the collection efforts under [Article 26A], Mr. Dewees paid the outstanding debt to the Service on August 18, 2015 "by sending to [CRA] a cheque in the amount of $134,116.46 US made out to the United States Treasury."  (*Id.*, ¶38.)

On September 17, 2015, Dewees alleges he filed a claim for refund with the Service seeking return of the full amount paid.  (*See id.*, ¶5.)  On May 23, 2016, the Service denied his request.  (*See id.*)

## STANDARD OF REVIEW

Because a subject matter jurisdiction challenge under Rule 12(b)(1) questions the Court's fundamental ability to hear a case, this issue must be decided before all others. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93 (1998).  If the Court does not have subject matter jurisdiction, all other questions are moot and the case must be dismissed. *See id.* at 94.  Dewees bears the burden of establishing the Court has subject matter jurisdiction.  *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

While a complaint "does not need detailed factual allegations," Dewees is obligated "to provide the 'grounds' of his 'entitle[ment] to relief'[, which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  The Rule 8 pleading standard "demands more than an unadorned, the-

11

defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' –

that the pleader is entitled to relief," and the complaint should be dismissed under Rule

12(b)(6) for failure to state a claim. *Id.* at 679.

## ARGUMENT

**I.  THE PENALTIES ASSESSED AGAINST DEWEES DO NOT VIOLATE THE EIGHTH AMENDMENT**

The Eighth Amendment states that "[e]xcessive bail shall not be required, nor

excessive fines imposed, nor cruel and unusual punishments inflicted."  Dewees argues

the penalties assessed against him violate the Excessive Fines Clause because "[t]hese

penalties are significantly disproportional to the tax ($0) owing from these filings."

(Compl., ¶47.)  Dewees argument fails for the simple reason that section 6038 penalties

are not "fines" under the Eighth Amendment because they are remedial rather than

punitive.  But even if such penalties are "fines," they are not excessive because Congress

fixed the amount of penalty at an amount calculated "to do no more than make the

Government whole."  *United States v. Halper*, 490 U.S. 435, 449 (1989) *abrogated on other

grounds by Hudson v. United States*, 522 U.S. 93 (1997).  Dewees' claim should be

dismissed for failure to state a claim upon which relief can be granted.

**A.  The assessed penalties are not fines under the Eighth Amendment.**

The Supreme Court has observed that the purpose of the Eighth Amendment

"was to limit the government's power to punish."  *Browning-Ferris Indus. v. Kelco*

*Disposal, Inc.*, 492 U.S. 257, 266-67 (1989).  The Excessive Fines Clause "limits the government's power to extract payments, whether in cash or kind, 'as *punishment* for some offense.'"  *Austin v. United States*, 509 U.S. 602, 609-10 (1993) (quoting *Browning-Ferris*, 492 U.S. at 265) (emphasis added by *Austin*).  Thus, the Excessive Fines Clause only applies to payments that are required to be made as a civil or criminal punishment, rather than as a remedial measure.  *See Austin*, 509 U.S. at 610 (holding, in the double jeopardy context, that certain forfeitures constituted punishments because they did not serve a solely remedial purpose); *see also United States v. Bajakajian*, 524 U.S. 321, 334 (1998) (holding that certain forfeitures are "fines" under the Eighth Amendment "if they constitute punishment for an offense").

Civil additions to tax and assessable penalties are remedial and not punitive in nature because they are "provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud."  *Helvering v. Mitchell*, 303 U.S. 391, 401 (1938) (citations omitted).  Thus, "[v]arious courts of appeals have categorically refused to extend *Austin* and *Bajakajian* into the realm of civil tax penalties."  *In re Wyly*, 552 B.R. 338, 609 (Bankr. N.D. Tx. 2016).

The First Circuit held that the Excessive Fines Clause does not apply to civil tax penalties.  *McNichols v. Comm'r*, 13 F.3d 432, 434 (1st Cir. 1993).  The Court recognized "there is an insurmountable wall of tax cases" holding that civil tax penalties are remedial rather than punitive.  *Id.* at 435-36 (citing *Mitchell*, 303 U.S. at 401, as the "foundation stone" of that wall).  In addition, "*Austin* does not directly or impliedly

13

suggest that either its holding or statement to the effect that a forfeiture can be an excessive fine under the Eight Amendment are or should be applicable to any actions other than forfeitures under 21 U.S.C. §§ 881(a)(4) and (a)(7)." *McNichols*, 13 F.3d at 436.

Likewise, the Fourth Circuit held that civil tax penalties are remedial in nature. *See Thomas v. Comm'r*, 62 F.3d 97, 100, 103 (4th Cir.1995) (citing *Mitchell*, 303 U.S. at 401). The Court stated "[a] civil sanction will be construed as an additional punishment only if bears no relation to the government's loss." *Thomas*, 62 F.3d at 100 (citing *Halper*, 490 U.S. at 449). The Court held that the United States was entitled to recover the cost of investigating Thomas' civil tax fraud through a penalty. *See Thomas*, 62 F.3d at 100-01. "As *Halper* teaches, 'the Government is entitled to *rough remedial justice*,'" in "'affixing a sanction that compensates the Government for all its costs.'" *Thomas*, 62 F.3d at 101 (quoting *Halper*, 490 U.S. at 446, 449) (emphasis added).

The Ninth Circuit has also held that civil tax penalties are not fines. *See Louis v. Comm'r*, 170 F.3d 1232, 1234 (9th Cir. 1999); *I&O Publish. Co., Inc. v. Comm'r*, 131 F.3d 1314, 1316 (9th Cir. 1997). In *Louis*, the Court held that "it is clear Congress intended additions to tax for fraud to be a 'civil, not criminal sanction.'" 170 F.3d at 1235 (quoting *Mitchell*, 303 U.S. at 402). "Additions to tax for fraud do not amount to an affirmative disability or restraint, nor have they historically been regarded as punishment." *Louis*, 170 F.3d at 1235 (citing *Hudson*, 552 U.S. at 104-05). Accordingly, "additions to tax for fraud are 'properly . . . characterized as remedial,' *Austin*, 509 U.S. at 608 n.4, and as such, are not subject to review under the Excessive Fines Clause."

14

*Louis*, 170 F.3d at 1235 (citing *Little v. Comm'r*, 106 F.3d 1445, 1454 (9th Cir. 1997) (finding section 6653(a) negligence penalties to be remedial)).

Courts in the Fifth Circuit have reached the same conclusion.  The Fifth Circuit held that a civil penalty for failure to file an informational return, like the penalties at issue here, "is analogous to the fraud penalty at issue in [*Mitchell*]," making it remedial rather than punitive.  *Bickham Lincoln-Mercury v. United States*, 168 F.3d 790, 795 (5th Cir. 1999).  In a recent in-depth analysis, a bankruptcy court determined civil tax penalties totaling $427,614,822 assessed for failure to file informational returns, including Forms 5471, were neither fines nor excessive for Eighth Amendment purposes.  *In re Wyly*, 552 B.R. at 613, 616.  The court noted the absence of "a single case that holds that a tax penalty [for failure to file information returns, like Forms 5471] is a fine under the Excessive Fines Clause."  *Id.* at 613.  The fact that "all civil penalties have some deterrent effect," *Hudson*, 522 U.S. at 102, is irrelevant.  *See In re Wyly*, 552 B.R. at 613.  "[I]f *any* deterrent purpose is sufficient in order to declare a civil sanction to be a punishment and therefore a fine, then all civil sanctions are necessarily punishment."  *Id.* (emphasis in original).  But "[t]his cannot be the proper result in light of" the Supreme Court's decisions in *Mitchell*, which holds that civil tax penalties are remedial, as well as *Austin* and *Bajakajian*, which require courts to determine whether the sanction at issue is a fine for Eighth Amendment purposes.  *In re Wyly*, 552 B.R. at 613.

In sum, the civil penalties assessed here are not fines for purposes of the Eighth Amendment because they are intended primarily to reimburse the United States its

14475887.1

costs in investigating Dewees failure to file the required informational returns.  Because the penalties are not fines, the Excessive Fines Clause does not apply.

**B.     Section 6038 penalties are not excessive under the Eighth Amendment.**

But even if section 6038 penalties are fines, they are not excessive.  Dewees alleges that the total amount of penalties ($120,000) is excessive, because it is "significantly disproportional to the tax ($0) owing from these filings."  (Compl., ¶¶46-47.)  Section 6038 authorizes the Service to assess a $10,000 penalty for each year a taxpayer fails to file Form 5471.  *See* 26 U.S.C. § 6038(b)(1).  Congress required this information to be provided even though it may not result in any tax liability.  *See* 26 C.F.R. § 1.6038-2(k)(4).  Dewees was assessed a $10,000 penalty for 12 separate violations of section 6038 over a 12-year period.  This Court must determine whether a fixed $10,000 penalty for violating section 6038 is excessive, rather than whether the total amount of penalty is disproportional to the tax owed.  Under applicable Supreme Court precedent, such fixed-penalties are not excessive.

In *Bajakajian*, the Supreme Court held that a punitive forfeiture violates the Excessive Fines Clause "if it is grossly disproportional to the gravity of a defendant's offence."  524 U.S. at 334.  In determining whether a fine is "grossly disproportional," courts consider: (i) "the essence of the violator's wrongdoing and its relation to other illegal activity," (ii) "whether the violator fits into the class of persons for whom the statute was principally designed," (iii) "the nature of the harm caused by the violator's conduct," and (iv) "the maximum non-forfeiture sentence and fine that could have been imposed."  *In re Wyly*, 552 B.R. at 608 (discussing *Bajakajian* factors); *see also Collins v.*

14475887.1

*SEC*, 736 F.3d 521, 527 (D.C. Cir. 2013) (noting these factors "hardly establish a discrete analytic process").

However, as the court in *Wyly* observed, a fixed-penalty provision like section 6038 "should rarely be considered excessive."  Courts decline to challenge Congress' determination of the amount of a fixed penalty, because "judgments about the appropriate punishment for an offense belong in the first instance to the legislature," and such judgments are entitled to "'substantial deference.'"  *Bajakajian*, 524 U.S. at 336 (quoting *Solem v. Helm*, 463 U.S. 277, 290 (1983)).  The United States "'is entitled to *rough remedial justice*, that is, it may demand compensation according to somewhat imprecise formulas, such as reasonably liquidated damages or a fixed sum plus double damages' without such a sanction being labeled as a punishment."  *In re Wyly*, 552 B.R. at 614 (quoting *Halper*, 490 U.S. at 446).  The Bankruptcy Court noted the absence of any case "that declares a fixed, nonforfeiture, legislative fine such as the one imposed under § 6038 unconstitutional."  *Wyly*, 552 B.R. at 614.

In addition, the *Bajakajian* factors show that the penalties at issue here are not excessive.  *First*, Dewees illegal activity was his failure to disclose information related to his ownership of a foreign corporation as required under section 6038.  Congress set a fixed-penalty of $10,000 per year for failure to comply with section 6038 in order to reimburse the United States the cost of investigating those who fail to file.  The penalty relates directly to the harm caused, as opposed to forfeiture, which "is a penalty that has absolutely no correlation to any damages sustained by society or to the cost of enforcing the law."  *Austin*, 509 at 621.  *Second*, Congress sought to penalize individuals

like Dewees, who failed to file Forms 5471. *Third*, the nature of the harm caused also

supports the amount of the fine. Although violation of section 6038 is a "mere reporting

offense," it can lead directly to harm "to the public fisc," by allowing taxpayers to avoid

paying tax on foreign income. *Bajakajian*, 524 U.S. at 337-40. *Fourth*, section 6038, as a

fixed penalty, has a built-in maximum, which makes it "strongly presumed to be

constitutional." *In re Wyly*, 552 B.R. at 617.

## II.   DEWEES' WITHDRAWAL FROM OVDP PRECLUDES SFCP PARTICIPATION

Dewees contends that his Fifth Amendment equal protection rights have been

violated because "other citizens in the same situation are afforded the opportunity to

submit filings for the reporting of foreign controlled corporations, bank account

reporting forms, and foreign trust reporting forms under [SFCP], and the Plaintiff

similarly situated was penalized." (Compl., ¶53.) As a primary matter, the complaint is

devoid of any allegation that Dewees ever made a request to participate in SFCP.

Absent such a request, he does not have standing to assert any claim regarding SFCP

because he has suffered no injury in fact. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555,

560 (1992). But even assuming for purposes of this motion that he did make such a

request, Dewees is not eligible to participate in SFCP under the terms of the program

because he participated in, but left, the 2009 OVDP. Dewees' claim should be dismissed

under both Rules 12(b)(1) and (b)(6).

The right to equal protection under the Fifth Amendment does not create "an

obligation to provide the best governance possible," but rather requires "legislation

classify the persons it affects in a manner rationally related to legitimate governmental

18

objectives." *Schweiker v. Wilson*, 450 U.S. 221, 230 (1981).  "If the classification has some

'reasonable basis' it does not offend the Constitution simply because the classification

'is not made with mathematical nicety or because in practice it results in some

inequality.'" *Dandridge v. Williams*, 397 U.S. 471, 485 (1970) (quoting *Lindsley v. Natural*

*Carbonic Gas Co.*, 220 U.S. 61, 78 (1911)).  The Supreme Court has repeatedly noted that

"'[l]egislatures have especially broad latitude in creating classifications and distinctions

in tax statutes.'"  *Armour v. City of Indianapolis*, --- U.S. ---, 132 S. Ct. 2073, 2080 (2012)

(quoting *Regan v. Taxation With Representation*, 461 U.S. 540, 547 (1976)).

In a recent decision, Judge Kollar-Kotelly noted, "[t]here is no alternative path

for a taxpayer participating in an OVDP [like Dewees] to leave such a program [also

like Dewees] and enter the SFCP."  *Maze*, 2016 WL 4007075, at *4; *see also* Transition

Rules: Frequently Asked Questions (FAQs), https://www.irs.gov/individuals/

international-taxpayers /transition-rules-frequently-asked-questions-faqs ("A taxpayer

whose case has been removed from OVDP by the IRS is no longer participating in

OVDP and thus is not eligible for the transitional treatment described in these FAQs.").

Dewees left the 2009 OVDP on June 16, 2011, over three years prior to SFCP.  (*See*

Compl., ¶28.)  The Service subsequently removed his case from OVDP and removed the

proposed penalty from his account.  (*See* Compl., ¶¶26-28.)  Under the terms of SFCP,

Dewees was no longer eligible to participate in the program.

The fact that Dewees may not participate in SFCP does not violate the equal

protection clause.  *First*, an agency's prosecutorial discretion does not implicate equal

protection.  *See Heckler v. Chaney*, 470 U.S. 821, 831-32 (1985) (prosecutorial discretion

19

"has long been regarded as the special province of the Executive Branch"); *Bunce v. United States,* 28 Fed. Cl. 500, 510 (Fed. Cl. 1993) (settlement discretion is "discretion to treat similarly situated taxpayers differently."). Congress granted the Service broad discretion to determine which claims should or should not be compromised. *See* 26 U.S.C. § 7122 ("The Secretary may compromise any civil or criminal case arising under the internal revenue laws"); 26 U.S.C. 7121(a) ("The Secretary is authorized to enter into an agreement in writing with any person relating to the liability of such person"). Nothing in this language suggests Congress intended to intrude upon the "special province of the Executive Branch" to enforce Federal tax law. *Heckler*, 470 U.S. at 832.

*Second*, both prohibiting former OVDP participants from participating in SFCP and precluding taxpayers from having previously assessed penalties abated through SFCP are rationally based on the Service's tax administration interests. Contrary to Dewees' allegations, an individual who has never participated in an OVDP is not similarly situated to an individual who was accepted into, but chose to leave, an OVDP. The purpose of disclosure programs is to incentivize delinquent individuals to come forward and voluntarily disclose information related to their foreign interests. The Service has a "legitimate government interest" in such disclosures, because they allow the Service to discover individuals and assets located outside of the United States. In exchange for that information, the Service offers certain compromise terms.

The Service does not have the same interest with regard to taxpayers who have disclosed information related to their foreign interests but failed to pay the tax liabilities associated with such foreign interests. Dewees elected to participate in the 2009 OVDP

and voluntarily disclosed his foreign interests.  Under the terms of the 2009 OVDP, he

was required to pay $185,862 in order to fully compromise his outstanding liabilities.

(*See* Compl., ¶¶24-25.)  Because he did not want to pay the full amount owed under the

program, he chose to leave the 2009 OVDP.  (*See id.*, ¶28.)  Although he now wants to

participate in SFCP, he has no information to offer the Service that would justify

compromising his outstanding liabilities (which may exceed the amount at issue here).

The Service, thus, has a rational basis to not offer the same compromise terms.

III.   **DEWEES' ABILITY TO CHALLENGE THE VALIDITY OF THE PENALTIES IN THE DISTRICT COURT IS SUFFICIENT TO PROTECT HIS DUE PROCESS RIGHTS**

Dewees complains that he had no pre-payment avenue other than administrative

remedies to challenge the penalties assessed against him.  (*See* Compl., ¶57.)  He states

that the United States Tax Court does not have jurisdiction over the penalties at issue

here.  (*See id.*, ¶60.)  He further states that, under Article 26A of the US-Canada Tax

Treaty, he had no appeal right in the United States to prevent collection assistance from

Canada.  (*See id.*, ¶64.)  He alleges: (1) the imposition of penalties "with no appeal

through administrative means or the U.S. Tax Court, and then assessing and collecting a

claim violates the Due Process Clause of the United States Constitution;" and (2) Article

26A, which permits the United States to seek collection assistance from Canada "with

no appeal or review is unconstitutional under the provisions of the United States

Constitution."  (Compl., ¶¶67-68.)

Dewees is correct that he was not entitled to contest the section 6038(b) penalties

in the United States Tax Court prior to assessment.  With respect to such penalties, the

21

Tax Court's jurisdiction is limited to reviewing penalties that are dependent on a deficiency determination.  *See, e.g., Smith v. Comm'r*, 133 T.C. 424, 428-30 (2009) (holding that the section 6707A penalty is not within the Tax Court's deficiency jurisdiction).   26 U.S.C. § 6201 generally allows the IRS to assess all taxes and penalties imposed by the Code.  Section 6211 defines a "deficiency" as "income, estate, and gift taxes imposed by subtitles A and B and excise taxes imposed by chapters 41, 42, 43, and 44."  Sections 6212(a), 6212(c), and 6213(a) incorporate this definition of "deficiency."  Since penalties under section 6038(b) are contained in subtitle F, chapter 61, these penalties are not subject to statutory notice of deficiency procedures, which precludes pre-assessment review in the Tax Court.

But that does not mean that Dewees' due process rights have been violated. Constitutional due process requires only that a person receive an opportunity to be heard before an impartial trier of fact.  *See Goss v. Lopez*, 419 U.S. 565, 579 (1975); *Jacob v. Roberts*, 223 U.S. 261, 265 (1912).  Dewees' ability to pay the full amount of the penalties and file this refund suit satisfies constitutional due process.  *See Phillips et al. v. Comm'r*, 283 U.S. 589, 595-98 (1931) ("Where only property rights are involved, the mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate").

Similarly, mutual collection assistance through Article 26A does not violate due process.  Dewees alleges he "had no appeal right in the United States to prevent this collection assistance from Canada."  (Doc. 1, ¶64.)  This statement is incorrect.  Article 26A does not create or provide any rights to administrative or judicial review *in Canada*

22

of the United States' finally determined revenue claims when the United States makes a

mutual assistance request.  *See* Article 26A, ¶5.  By making payment, his only right of

review is with the District Court, which he has done by filing this suit.  *See Phillips*, 283

U.S. at 595-98.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the complaint because it

lacks subject jurisdiction and Dewees has failed to state a claim upon which relief can be

granted.

Dated:    October 28, 2016                    Respectfully submitted,

                                              CAROLINE D. CIRAOLO
                                              Principal Deputy Assistant Attorney General

                                              /s/ Christopher J. Williamson
                                              CHRISTOPHER J. WILLIAMSON
                                              Trial Attorney, Tax Division
                                              U.S. Department of Justice
                                              Ben Franklin Station, P.O. Box 227
                                              Washington, DC  20044
                                              Telephone: (202) 307-2250
                                              Fax: (202) 514-6866
                                              christopher.j.williamson@usdoj.gov

OF COUNSEL:

CHANNING D. PHILLIPS
United States Attorney

23

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on October 28, 2016, I filed the foregoing STATEMENT OF POINTS

AND AUTHORITIES IN SUPPORT OF THE UNITED STATES' MOTION TO DISMISS

with the Clerk of Court using the CM/ECF system, which will send notice of this filing

to all parties registered to receive such notice, including plaintiff's counsel.


<u>/s/ Christopher J. Williamson</u>
CHRISTOPHER J. WILLIAMSON

14475887.1