UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DONALD DEWEES,**<br>Plaintiff,<br>v.<br>**UNITED STATES OF AMERICA,**<br>Defendant. | Case No. 16-cv-01579 (CRC) |

**MEMORANDUM OPINION**

The arm of the U.S. tax man is long, but in this case it needed extend only over our northern border to find Plaintiff Donald Dewees. Dewees is a U.S. citizen living in Canada, where he operates a consulting business. Because the business is incorporated abroad, Dewees was required to furnish certain annual information about the company to the IRS. 26 U.S.C. § 6038(b). Unfortunately for Dewees, he neglected to do so for over a decade.

Enter the tax man. After Dewees voluntarily disclosed his failure to file the required informational returns, the IRS assessed a statutory penalty of $120,000, $10,000 for each year of non-compliance. Dewees challenged the penalty before the IRS without success and refused to pay it. But what Dewees likely did not anticipate is that, pursuant to the U.S.-Canada tax treaty, the Candian tax authority would hold Dewees' domestic tax refund in abeyance until the IRS penalty was paid in full. After paying the penalty, Dewees filed suit in this Court challenging the relevant treaty provisions as unconstitutional under the Eighth Amendment and both the Due Process and Equal Protection Clauses of the Fifth Amendment. The Government now moves to dismiss. Finding that Dewees has failed to state a claim for relief on his Eighth Amendment and

due process claims, and lacks standing to bring his equal protection claim, the Court will grant the Government's motion and dismiss the case.

## I. Background

U.S. citizens who hold controlling interests in foreign corporations must annually file IRS Form 5471, which discloses certain ownership and financial information about the corporation. In addition, U.S. citizens living abroad must disclose holdings in foreign bank accounts over certain thresholds by filing a Report of Foreign Bank and Financial Accounts ("FBAR"). See Def.'s Mot. to Dismiss ("MTD") 7; Compl. ¶ 12. In 2009, Dewees learned that he had failed to comply with these requirements, and, on the advice of a tax specialist, applied to participate in the IRS's Offshore Voluntary Disclosure Program ("OVDP"). See Compl. ¶¶ 13–16. OVDP is intended to encourage taxpayers who have not disclosed their offshore assets, and who are not already under investigation by the agency, to voluntarily comply with applicable disclosure requirements. See IRS, *2009 Offshore Voluntary Disclosure Program*, https://www.irs.gov/uac/2009-offshore-voluntary-disclosure-program; Maze v. IRS ("Maze I"), 206 F. Supp. 3d 1, 5–6 (D.D.C. 2016), aff'd, 2017 WL 2989488 (D.C. Cir. July 14, 2017). In return for their disclosures, the program offers taxpayers compromise terms on penalties for outstanding taxes, assurance that the IRS will not refer the matter to the Department of Justice for criminal prosecution, and finality regarding previous non-disclosures. See Maze I, 206 F. Supp. 3d at 6–7. The IRS assessed a penalty of $185,862 against Dewees for not filing FBARs from 2003 to 2008, but did not at that time calculate a penalty for Dewees' failure to file Form 5471. See Compl. ¶¶ 22, 24–25; IRS, *Taxpayers with Foreign Assets May Have FBAR and FATCA Filing Requirements in June*, https://www.irs.gov/uac/newsroom/taxpayers-with-foreign-

assets-may-have-fbar-and-fatca-filing-requirements-in-june. Dewees refused to pay the assessed penalty and withdrew from the OVDP. See id. ¶¶ 26–27.

In September 2011, the IRS notified Dewees that it had assessed a different penalty of $120,000 against him for failing to file Form 5471 from 1997 to 2008. See id. ¶¶ 1, 29. Section 6038(c) of the Tax Code authorizes the IRS to impose a $10,000 penalty for each missed filing. See 26 U.S.C. § 6038(c). The total penalty was based entirely on Dewees' failure to file; he was not liable for any unpaid taxes. See Compl. ¶ 47. Dewees requested an abatement of this penalty for reasonable cause, which was denied, as was his subsequent appeal of that decision. See id. ¶¶ 35–36.

Well after Dewees' appeal had been rejected, the IRS introduced another program to encourage taxpayers to voluntarily disclose offshore assets—the Streamlined Filing Compliance Procedures ("SFCP"). The SFCP differs from the OVDP in several respects: The SFCP involves less paperwork and imposes lower penalties than the OVDP, but only covers three years of non-compliance as opposed to the OVDP's eight-year coverage period. See Def.'s MTD 3–4; Compl. ¶ 50; Maze v. IRS, 2017 WL 2989488, at *1 (D.C. Cir. July 14, 2017) ("Maze II"). And, unlike the OVDP, the SFCP does not offer immunity from criminal prosecution. See id., at *4 n.2. Transferring between the two programs is generally disfavored, but taxpayers who are otherwise eligible for the SFCP and made their OVDP submissions before July 1, 2014, may remain in the OVDP while requesting the more favorable terms available under the SFCP. See Maze I, 206 F. Supp. 3d at 7–8.

In May 2015, the Canadian Revenue Agency notified Dewees that it was holding his Canadian tax refund in abeyance due to his outstanding $120,000 debt to the IRS. See Compl. ¶ 37. This international collection assistance is permitted by Article XXVI(A) of the United

States-Canada Income Tax Convention. See Def.'s MTD 9–10; Compl. ¶ 37. Dewees promptly sent the Canadian Revenue Agency a check for $134,116.34, representing the $120,000 penalty plus interest. See Compl. ¶ 38. In September 2015, he filed a claim seeking a refund of that amount, which was rejected in May 2016. See Compl. ¶ 5. He then brought this action, requesting that the Court find the collection assistance provisions of the United States-Canada Tax Convention unconstitutional for violating (1) the Excessive Fines Clause of the Eighth Amendment, (2) the Due Process Clause of the Fifth Amendment, and (3) the Equal Protection Clause of the Fifth Amendment. See id. ¶¶ 42–47, 66–67, 52–53.

## II. Standards of Review

The Government moves to dismiss for failure to state a claim upon which relief can be granted with respect to all three of Dewees' claims. See Def.'s MTD 1. Alternatively, it asks that Dewees' equal protection claim be dismissed for lack of subject matter jurisdiction. See id. at 18. Under Federal Rule of Civil Procedure 12(b)(1), the Court must dismiss any action over which it cannot properly exercise jurisdiction. "[D]efect[s] of standing" constitute "defect[s] in subject matter jurisdiction." Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987). The "plaintiff bears the burden of . . . establishing the elements of standing," and each element "'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" Arpaio v. Obama, 797 F.3d 11, 19 (D.C. Cir. 2015) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

To survive a 12(b)(6) motion, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court

"accept[s] as true all of the allegations contained in [the] complaint," disregarding "[t]hreadbare recitals of the elements of a cause of action" and "mere conclusory statements." Iqbal, 556 U.S. at 678. The court then examines the remaining "factual content [to determine if it may] draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court must also consider "documents incorporated into the complaint by reference." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

## III. Analysis

### A. Excessive Fines Claim

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. In analyzing an excessive fines claim, the Court must first decide whether a penalty is a fine before determining if it is unconstitutionally excessive. See United States v. Bajakajian, 524 U.S. 321, 334 (1998). A payment to the government is only considered a "fine" under the Eighth Amendment if it is "punishment for some offense." Bajakajian, 524 U.S. at 328 (quoting Austin v. United States, 509 U.S. 602, 609–10 (1993)). In other words, the purpose of the penalty must be primarily retributive or deterrent rather than remedial. Id. In the context of forfeiture, for example, a penalty that is solely "designed to punish the offender" is considered punishment and is thus limited by the Excessive Fines Clause. Id. at 333–34.

Tax penalties, by contrast, having been held to fulfill a remedial purpose are therefore not subject to the Excessive Fines Clause. The Supreme Court first articulated this principle almost 80 years ago in Helvering v. Mitchell, 303 U.S. 391 (1938), reasoning that tax penalties are remedial because they exist as "a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's

fraud." Id. at 401 (citing a string of supporting precedent). Since then, the lower courts have erected "an insurmountable wall of tax cases" to support this proposition. See, e.g., McNichols v. Comm'r of Internal Revenue, 13 F.3d 432, 434 (1st Cir. 1993) (holding that the Excessive Fines Clause does not apply to civil tax penalties and characterizing the proposed extension of rule from forfeiture cases to tax penalties as an unsupported "giant leap"); Little v. Comm'r of Internal Revenue, 106 F.3d 1445, 1455 (9th Cir. 1997) (holding that the Excessive Fines Clause was not violated because plaintiff "failed to establish that the additions to tax in question [were] penal sanctions unrelated to the government's fundamental interest in raising revenue"); Thomas v. Comm'r of Internal Revenue, 62 F.3d 97, 102–03 (4th Cir. 1995) (same). A Bankruptcy Court recently applied this precedent in holding the same Form 5471 non-compliance penalties challenged here are not fines. See In re Wyly, 552 B.R. 338, 608 (Bankr. N.D. Tex. 2016). The Court concludes likewise. Because "a small, fixed-penalty provision," such as the $10,000 penalty here, "can be said to do no more than make the Government whole," it is outside the Eighth Amendment's reach. Austin, 509 U.S. at 622 n.14 (internal quotations omitted).

Dewees nonetheless attempts to scale this "insurmountable wall" of precedent by arguing that a smaller penalty would have achieved the same objective of making the Government whole. See Pl.'s Opp'n 3. But that is beside the point. Congress authorized a $10,000 penalty for every instance of non-compliance because it recognized the expenses and loss that could result if U.S. taxpayers no longer felt obligated to disclose their foreign assets. The IRS strictly applied that statutorily authorized amount across Dewees' twelve years of non-compliance, resulting in a total penalty of $120,000—an amount designed to mitigate the harm suffered by the Government. Because Congress authorized this penalty for a legitimate remedial purpose, Dewees' Eighth Amendment claim fails.

B. Due Process Claim

Dewees likewise fails to establish a due process violation because he has been afforded an adequate "opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). Courts judge procedural due process challenges to property deprivations by weighing (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335.

Mere postponement of an opportunity to challenge the imposition of a tax penalty "is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate." Phillips v. Comm'r of Internal Revenue, 283 U.S. 589, 596–97 (1931). Such delays are "an inevitable consequence" of disputes between taxpayers and the IRS, and are not unconstitutional. Bob Jones Univ. v. Simon, 416 U.S. 725, 747 (1974). Federal district courts have jurisdiction over lawsuits against the Government for the refund of tax penalties. See 28 U.S.C. § 1346(a)(1). Full payment of the amount owed followed by a lawsuit in a district court seeking a refund is a proper procedure for challenging penalties assessed under § 6038. See Wheaton v. United States, 888 F. Supp. 622, 627 (D.N.J. 1995) (citing 28 U.S.C. § 1346(a)). Section 1346 gives district courts original jurisdiction over "any civil action against the United States for the recovery of . . . any penalty claimed to have been collected without authority or any sum alleged to have been excessive on in any manner wrongfully collected under the internal-revenue laws[.]" Id. That is so even if this results in the taxpayer being "in the position

of paying a substantial tax penalty without prepayment review." Id.; see also Nat'l Fed'n of Indep. Bus. v. Sebelius, 567 U.S. 519, 543 (2012) ("[T]axes can ordinarily be challenged only after they are paid, by suing for a refund.").

Dewees claims that he was denied adequate due process because he had no opportunity to appeal his penalty "through administrative means or the U.S. Tax Court" before it was collected. Compl. ¶ 67. But the absence of Dewees' requested avenue of relief does not mean his due process rights have been violated. The ability to challenge tax penalties in *district courts* under § 1346(a)(1) fulfills the Fifth Amendment's requirements. Accordingly, Dewees has failed to state a claim for relief under the Due Process Clause of the Fifth Amendment.

C. Equal Protection Claim

Finally, the Government moves to dismiss Dewees' equal protection claim for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. See Def.'s MTD 18. The Court must start with the jurisdictional issue. In order to have standing to litigate a claim in federal court, a plaintiff must establish an injury in fact, which is traceable to the defendant, and which is likely to be redressed by prevailing in court. Lujan, 504 U.S. at 560–61. A sufficient injury in fact is concrete and particularized, and actual or imminent as opposed to merely hypothetical. Id. at 560. It is the plaintiff's burden to demonstrate that his claim satisfies all of these elements. Id. at 561. In considering a motion to dismiss for lack of standing, the Court must assume the truth of the plaintiff's factual allegations but not his legal conclusions, which must be supported by more than "mere conclusory statements." Williams v. Lew, 819 F.3d 466, 472 (D.C. Cir. 2016) (quoting Iqbal, 566 U.S. at 663).

Dewees bases his equal protection claim on the contention that he was not allowed to participate in the SFCP while other similarly situated taxpayers were, and thus he was denied the

opportunity to have a lower penalty imposed. See Compl. ¶¶ 52–53. This argument suffers from a fatal flaw because, as the Government points out, Dewees has not pled that he sought entrance into the SFCP or that his application was denied. See Def.'s MTD 18. And because Dewees has not shown (or attempted to show) that the IRS ever denied him the opportunity to participate in the SFCP, he cannot establish that he suffered an *actual* injury. By failing to show that he was injured, Dewees lacks standing and this Court lacks jurisdiction to hear his claim.[1]

## IV. Conclusion

For the reasons discussed above, the Court finds that Dewees has failed to state a viable claim with respect to his excessive fines and due process claims, and that it lacks subject matter jurisdiction over Dewees' equal protection claim. Accordingly, it will grant the Government's motion to dismiss. A separate Order accompanies this Memorandum Opinion.

Christopher R. Cooper

CHRISTOPHER R. COOPER
United States District Judge

Date: August 8, 2017

[1] The Government alternatively moves to dismiss under Rule 12(b)(6) for failure to state a claim. Because the Court lacks subject matter jurisdiction, it will not consider this contention. The Court notes, however, that a fellow court in this district denied a similar equal protection claim, holding that a taxpayer who participated in OVDP prior to July 1, 2014 "*may* be able to receive the favorable penalty terms of the Streamlined Procedures, but must remain in the OVDP in order to do so." Maze I, 206 F. Supp. 3d at 7–8. Applying that principle here, Dewees' decision to leave the OVDP—and not the IRS's actions—rendered him ineligible for the SFCP.